UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

TEXT ADS AND MARKETING, LLC, a
Pennsylvania Limited Liability Company,

Plaintiff,

v.

Civil Action No.

JOHN C. RAFFERTY, JR., in his official capacity as
Board Chair of The Disciplinary Board of the Supreme
Court of Pennsylvania; GRETCHEN A. MUNDORFF, in
her official capacity as Board Vice-Chair of The
Disciplinary Board of the Supreme Court of Pennsylvania;
GAETAN J. ALFANO, in his official capacity as Member
of The Disciplinary Board of the Supreme Court of
Pennsylvania; JOSHUA M. BLOOM, in his official
capacity as Member of The Disciplinary Board of the
Supreme Court of Pennsylvania; CELESTE L. DEE, in her
official capacity as Member of The Disciplinary Board of
the Supreme Court of Pennsylvania; LAURA E.
ELLSWORTH, in her official capacity as Member of The
Disciplinary Board of the Supreme Court of Pennsylvania;
ROBERT J. MONGELUZZI, in his official capacity as
Member of The Disciplinary Board of the Supreme Court
of Pennsylvania; BRYAN S. NEFT, in his official capacity
as Member of The Disciplinary Board of the Supreme
Court of Pennsylvania; CATHERINE R. O'DONNELL, in
her official capacity as Member of The Disciplinary Board
of the Supreme Court of Pennsylvania; DAVID S.
SENOFF, in his official capacity as Member of The
Disciplinary Board of the Supreme Court of Pennsylvania;
SHOHIN H. VANCE., in his official capacity as Member
of The Disciplinary Board of the Supreme Court of
Pennsylvania; JOSHUA F. WILSON, in his official
capacity as Member of The Disciplinary Board of the
Supreme Court of Pennsylvania; THOMAS J. FARRELL,
in his official capacity as Chief Disciplinary Counsel of the
Office of Disciplinary Counsel; RAYMOND S.
WIERCISZEWSKI, in his official capacity as Deputy
Chief Disciplinary Counsel of the Office of Disciplinary
Counsel

Defendants.

**Demand For Jury Trial**

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Forty-Seven years ago, our Supreme Court held that advertising for an attorney is a type of commercial speech protected by the First Amendment. *Bates v. State Bar of Ariz. 433 U.S. 384* (1977). Eleven years after *Bates,* the Supreme Court held the First Amendment does not permit a ban on certain speech merely because it is more efficient; the State may not constitutionally ban a particular letter on the theory that to mail it only to those whom it would most interest is somehow inherently objectionable. *Shapero v. Kentucky Bar Ass'n. 486 U.S. 473-474* (1988). Through ratification of Pennsylvania Rule of Professional Conduct 7.3(b) comment two [2], on October 15, 2024, the state of Pennsylvania seeks to redefine what a "real-time" electronic communication is categorized as and to prohibit the natural progression of direct solicitations for legal services. As did the Kentucky Bar Association in *Shapero*, Pennsylvania is trying to prohibit an attorney from sending a direct solicitation through more efficient means. *Id.* The Constitution of the United States prohibits that.

2. Text Ads and Marketing, LLC., a Pennsylvania Limited Liability Company (hereinafter "Text Ads"), has spent tens of thousands of dollars researching and developing the technology to send direct solicitations to criminal defendants via text message (hereinafter "SMS") and email, on behalf of attorney clients. Text Ads has been servicing clients in Pennsylvania since May 2024 and has service contracts with its clients. The adoption of the amendment of Rule 7.3(b) comment [2], on November 14, 2024, will immediately make all the current contracts void. Further, it has already interfered with and halted negotiations for a contract that was set to be executed in December 2024, causing

irreparable harm to Plaintiff.

3. This civil rights action seeks a declaration that Rule 7.3(b) comment [2] on its face violates the First Amendment (as incorporated through the Fourteenth Amendment) and Plaintiff seeks an injunction preventing Defendants, in their official capacities, from enforcing the rule.

## JURISDICTION AND VENUE

4. Plaintiff brings this action pursuant to Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§2201–02, for violations of the First and Fourteenth Amendments to the United States Constitution.

5. This Court has subject-matter jurisdiction pursuant 28 U.S.C. §§ 1331 and 1343(a).

6. Venue is proper in this district under 28 U.S.C. § 1391(b).

## PARTIES

7. Plaintiff Text Ads and Marketing, LLC., is a Pennsylvania Limited Liability Company, incorporated and headquartered in Pittsburgh, Pennsylvania.

8. Defendants John C. Rafferty, Jr., Gretchen A. Mundorff, Gaetan J. Alfano, Joshua M. Bloom, Celeste L. Dee, Laura E. Ellsworth, Robert J. Mongeluzzi, Bryan S. Neft, Catherine R. O'donnell, David S. Senoff, Shohin H. Vance, Jr., and Joshua F. Wilson, are the members of The Disciplinary Board of the Supreme Court of Pennsylvania (the "Board"), each of whom is being sued in his or her official capacity. Mr. Rafferty is Board Chair; Mr. Mundorff is Board Vice-Chair. The Pennsylvania Constitution, Article V, §10(c), vests authority in the Pennsylvania Supreme Court to prescribe general rules for practice and procedures of law within the State. Pursuant to this authority, the Pennsylvania Supreme Court established the Board in 1972 to regulate attorney conduct. Sitting in panels, the Board adjudicates actions prosecuted by the

Office of Disciplinary Counsel (the "Office") that seek to enforce the Pennsylvania Rules of Professional Conduct against Pennsylvania-licensed respondent-attorneys.

9.  Defendant Thomas J. Farrell is Chief Disciplinary Counsel of the Office of Disciplinary Counsel. Defendant Raymond S. Wierciszewski is Deputy Chief Disciplinary Counsel of the Office of Disciplinary Counsel. Each is being sued in his official capacity. The Office receives complaints of unethical conduct, investigates such complaints, and initiates and prosecutes disciplinary proceedings against respondent-attorneys. The Chief Disciplinary Counsel and the Deputy Chief Disciplinary Counsel supervise the Office.

## FACTS

### The Plaintiff

10. During the course of Plaintiff's research and development of its technology, it researched the Pennsylvania Rules of Professional Conduct.

11. At that time, the Pennsylvania Rules of Professional Conduct 7.3(b) comment [2], prohibits "real-time" electronic communications, but gave no definition.

12. Plaintiff then conducted independent research to determine if a SMS is considered a "real-time" electronic communication or not.

13. The research material included, but not limited to, the following of resources:

  a.  American Bar Association Module Rules of Professional Conduct 7.3(b). comment [2].

    i.  "Live person-to-person contact" means in-person, face-to-face, live telephone and other real-time visual or auditory person-to-person communications where the person is subject to a direct personal encounter without time for reflection. Such person-to-person contact does not include chat rooms, text messages or other written

communications that recipients may easily disregard."

 b. Philadelphia Bar Association ethics opinion 2013-2:

  i. "The Board's view is that a **standard text message is more akin to an email than a chat room communication**. Accordingly, a typical text message is not a real-timeʳ electronic contact. Lawyers may likewise solicit clients using test messages so long as the technology used to implement the text message does not generate a real-time or live conversation." (Opinion 2013-2, Page 5, emphasis added)."

14. On or about May 7, 2024, Plaintiff begun operations in Pennsylvania, sending out direct solicitation text messages to criminal defendants, whose dockets were filed and put on public record, on behalf of attorney Joseph Pometto, with whom Plaintiff had entered into an agreement.

15. On or about June 4, 2024, Plaintiff also incorporated sending email solicitations to criminal defendants, in addition to the SMS solicitations.

16. Plaintiff's painstaking and costly development of its software technology has resulted in a copyright and a patent is pending.

17. By August 2024, Plaintiff had multiple contracts with Pennsylvania attorneys for its SMS direct solicitation services.

18. One of Plaintiff's service contracts is set to expire on December 1, 2024, and that client had expressed interest in signing a one-year contract to include more than three times the monthly volume of the current contract. An signed and notarized Affidavit by Ellis B. Klein, Esquire is attached hereto as Plaintiff's Exhibit "1."

19. Plaintiff's messaging software technology is in full compliance with The Telephone Consumer Protection Act of 1991 (hereinafter "TCPA") as it does not use a random

number generator to generate or store any numbers.

20. Plaintiff acquires a phone number for specific people based on the name and date of birth on public court dockets then acquires the precise wireless number and email for that person from a data broker.

21. Plaintiff's Pennsylvania clients have expressed their concern about the impending change to Pennsylvania Rules of Professional Conduct 7.3(b) comment [2], because the SMS service generates many more leads than the emails and more than four times the leads than letter solicitations.

22. Additionally, as far as a person feeling compelled to respond to the SMS Plaintiff is sending, they are under no obligation to respond if they do not want to.

23. Plaintiff has its software set up so that messages on the behalf of an attorney client is sent from a toll-free (1-800) number and if a person responds "Stop" then their number will be put a on a blocked list allowing no further contact.

24. However, if an SMS recipient wishes to engage in a conversation with the attorney who sent the SMS, they are instructed to contact the law firm or attorney's phone number, which had been added in the body of the message.

**Pennsylvania Rules of Professional Conduct 7.3(b) Comment [2]**

25. On or about August 6, 2018, the American Bar Association (hereinafter "ABA") amended their Model Rules of Professional Responsibility 7.3(b) comment [3], to state, "The potential for overreaching inherent in live person-to-person contact justifies its prohibition, since lawyers have alternative means of conveying necessary information. In particular, communications can be mailed or transmitted by email or other electronic means that do not violate other laws."

26. This change to the ABA model rules was made because our society, and technology, has evolved so much so that the era we currently live in is often called the Digital Era.

27. The ABA has acknowledge the change and has elected to adapt to the change in society, as it now expressly allow direct solicitation through SMS and email delivery.

28. In 2021, the Disciplinary Board of the Supreme Court of Pennsylvania put a proposed rule change into circulation for comment, with the Pennsylvania Bulletin, to the Professional Rules of Conduct, including 7.3 comment [2]. All comments were to be returned by May 21, 2021.

29. The proposed change read:

    a. "Comment 2 to Rule 7.3 defines live person-to-person contact as "in-person, face-to-face, live telephone, and other real time visual or auditory person-to-person communications where the person is subject to a direct personal encounter without time for reflection." Chat rooms, text messages, or other written communications that recipients may easily disregard are excluded from the definition. It added: "A potential for overreaching exists when a lawyer, seeking pecuniary gain, solicits a person known to be in need of legal service," noting that when a trained advocate presses for an immediate response, overreaching may occur."

30. This proposed change would have expressly allowed a Pennsylvania attorney to send text message solicitations to criminal defendants; however, the adopted change is the exact opposite of the proposed change regarding text messaging.

## Judicial Conduct Board Rules of Procedure

31. On or about March 20, 1995, the Supreme Court of Pennsylvania adopted the Judicial Conduct Board Rules of Procedure.

32. Rule eight governs Rule-Making Procedures which have not been changed since its initial adoption.

33. Rule eight: Rule-Making Procedure is as follows:

   a. **(A) Modification Procedures.**

      i. (1) The rules may only be amended or rescinded, or new rules adopted, by the affirmative vote of a majority of the members of the Board.

      ii. (2) Notice of any Board action on these rules shall be given to all members of the Board at least 30 days before the meeting at which such action will be taken, unless the time period is shortened by unanimous vote of the Board.

   b. **(B) Publication of Proposed Changes.**

      i. (1) Except as provided in paragraph (B)(2), any proposed change to these rules shall be forwarded to the Pennsylvania Bulletin for publication with a notice requesting comment.

      ii. (2) A proposed rule change may be promulgated without publication where exigent circumstances require the immediate adoption of the proposal or where the proposed change is of a typographical or perfunctory nature.

   c. (C) Adoption. These rules and any subsequent changes to them shall be available for public inspection upon adoption and shall be forwarded to the

Legislative Reference Bureau for publication in the Pennsylvania Bulletin.

34. The rule change to Professional Rules of Conduct 7.3 comment [2], that was adopted on October 15, 2024, was never published in the Pennsylvania Bulletin with a notice requesting comment, nor was it published anywhere else.

35. This is a clear violation of the Rule-Making Procedures that the disciplinary board is required to follow.

**Damages**

36. Plaintiff still plans to conduct business operations in Pennsylvania but most, if not all, of its standing contracts will become void on November 14, 2024.

37. As a result, Plaintiff is suffering a clear monetary loss, is suffering a devastating impact to the growth of its business and is losing all of its current and potential clients as a result.

38. Plaintiff, to its knowledge, is the only company currently offering this service in Pennsylvania, and other than its clients, and this rule change has clear and detrimental effect only on the Plaintiff.

39. Plaintiff, reasonably infers, based on the information that it has at its disposal, that the Disciplinary Board has only adopted this rule, by improper procedure, as a response to the service that was started in Pennsylvania, earlier this year, by the Plaintiff.

40. There is no substantial government interest to be had by prohibiting attorneys from making a direct solicitation by SMS, while also allowing attorneys to make a direct solicitation by email.

41. There is no real distinction between receiving an email and a SMS, because they

both send a notification to a phone, they both can be read at the recipient's leisure, they both can be deleted or closed out of the application, nobody will know if a person reads the solicitation or not, and a person does not have to respond to either email or text message.

42. If the adoption of the rule change stands, then Plaintiff will suffer irreparable harm, incalculable monetary damages in long-term business growth, and very substantial, calculable monetary damages due to an interruption and interference of business contracts.

## CAUSE OF ACTION

### Count I: Unconstitutional infringement of free speech

43. Plaintiff reasserts and realleges paragraph one (1) through forty-two (42) as if fully set forth therein.

44. According to the First Amendment to the United States Constitution, "Congress shall make no law…abridging the freedom of speech."

45. The First Amendment has been incorporated to apply to the states through the Fourteenth Amendment.

46. Plaintiff's speech, as described above, is fully protected by the First Amendment.

47. The Supreme Court has held, time and time again that attorney advertising is constitutionally protected commercial speech.

48. The Central Hudson test is a four prong test to determine if the commercial speech is protected by the First Amendment. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 566 (1980). The test reads:

(1) whether the speech at issue concerns lawful activity and is not

misleading;
(2) whether the asserted government interest is substantial; and, if so,
(3) whether the regulation directly advances the governmental interest asserted; and
(4) whether it is not more extensive than is necessary to serve that interest.

*Id.*

49. The SMS that Plaintiff send, for its attorney clients adheres to all relevant and applicable laws, is not misleading, and are personalized solicitations to each individual.

50. The asserted government interest is not substantial. The "asserted interest" is that the government thinks that it is not in the best interest of a criminal defendant to consult with an attorney when they are charged with a crime.

51. Additionally, the regulation does not directly advance the government interest asserted because a SMS puts no more pressure on an individual than an email does, if anything it restricts the right to counsel that all criminal defendants have.

52. Finally, it is entirely more extensive than necessary to serve the government's asserted interest and because the rule defines a text message as a real-time electronic communication; whereas, it is actually an asynchronous communication, which means it's a type of message that a person doesn't need to respond to immediately, unlike instant messaging in a chat room where everyone is virtually present.

53. On its face and as applied to speech like Plaintiff's, Rule 7.3, comment [2], violates the right to free speech guaranteed by the First Amendment of the Constitution of the United States.

54. Unless Defendants are enjoined from enforcing and adjudicating Rule 7.3 comment [2],

Plaintiff will suffer irreparable harm.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  A declaratory judgment that the changes Rule 7.3(b) comment [2], facially violates the First and Fourteenth Amendments to the United States Constitution.

B.  A permanent injunction prohibiting Defendants and their agents from enforcing 7.3(b) comment [2], as it pertains to text messaging.

C.  An award of attorneys' fees, costs, and expenses in this action; and

D.  The actual damages that the adoption of this rule has caused Plaintiff.


Respectfully submitted,

DATE : October 23, 2024

*Paul A. Luvara*
Paul A. Luvara, Esq.
PA ID No. 331040
Direct: (412) 440-5224
pluvara@luvaralaw.com

## **AFFIDAVIT OF ELLIS B. KLEIN**

1.     My name is Ellis B. Klein and I am the Managing Partner of Ellis B. Klein and Associates. I am authorized to execute this Affidavit on behalf of Ellis B. Klein and Associates.

2.     I have personal knowledge as to the multiple Special Service Agreement that Ellis B. Klein and Associates entered into with Text Ads and Marketing LLC over the course of the year 2024.

3.     The first Agreement that was entered into was executed on May 14, 2024, and was a one month long trial contract that commenced on June 17, 2024 and ultimately concluded on August 2, 2024.

4.     Text Ads and Marketing LLC, extended the trial period by a few week due to technical complications on their side.

5.     After the conclusion of the trial period, I was very pleased with the service and the service performed much better than anticipated, so much so that I request a new service agreement that would expand the service being provided.

6.     A second, three month, Special Service Agreement was execute on August 18, 2024 that would commence on August 31, 2024 and would continue until December 1, 2024.

7.     When signing the second Special Service Agreement there was a conversation about expanding the services once again at the conclusion of the agreement, pending the services performed as well or better than the trial period.

2

8.      Because of this new rule change announcement, my second Special Service Agreement will be forced to terminate early and future business with Text Ads and Marketing LLC is now interrupted.

9.      I have experienced very positive responses from my clients (and potential clients whom I have spoken with who have not retained me) from the text message solicitation.

Further the Affiant sayeth naught.

_____

Ellis B. Klein, Esquire

Before me this 22nd day of October, 2024

_____

Notary Public

My Commission Expires: 6/3/27

Commonwealth of Pennsylvania - Notary Seal
Lindsay Morris, Notary Public
Bucks County
My Commission Expires June 3, 2027
Commission Number 1262955

3